**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **Santos Hernandez Gomez and Maria Felix Lopez Espinoza (on behalf of their minor son "YHL"** | ) **CIVIL ACTION No:** |
| **PLAINTIFFS** | ) |
| **-vs-** | ) **DIV.____SECT.____MAG.___** |
| **Sheriff Newell Normand, in his Official Capacity as Chief Law Enforcement Officer of Jefferson Parish, and Sergeant Julio Alvarado, individually and in his Official Capacity and ABC Insurance Company** | ) |
| **DEFENDANTS** | ) |
| | )**JURY TRIAL REQUESTED** |

**COMPLAINT FOR DAMAGES**

This is a civil rights complaint brought by SANTOS HERNANDEZ GOMEZ and MARIA FELIX LOPEZ ESPINOZA on behalf of their minor son "**YHL"** ("Plaintiff"/Plaintiffs"). Plaintiff and his parents are domiciled in the Parish of Jefferson, Eastern District of Louisiana. Plaintiff files suit pursuant to 42 USC §1983, which entitles a person to recover damages against a public entity when harmed by an unlawful policy or custom maintained by that entity. They file suit pursuant to the 4th, 5th, and 14th Amendments to the U.S. Constitution and provisions of the Louisiana State Constitution, and various state laws governing tort claims in the State of Louisiana for use of excessive force; intentional infliction of emotional distress; battery; and assault.

Plaintiff suffered compensatory, special, and punitive damages because of intentional acts of assault and battery committed by Defendant, Jefferson Parish Sheriff's Officer, Sergeant Julio

Alvarado, and the grossly negligent, and intentional failure on the part of Defendant, Jefferson Parish Sheriff's Office, Sheriff, Newell Normand to supervise, train, discipline, and control Defendant Julio Alvarado, and other law enforcement officials in his employ.

At all times, relevant to the facts at bar, Defendant acted in the course and scope of his duty as an agent of the law and employee of Jefferson Parish Sheriff's Department. Defendant is not entitled to any form of immunity, because his conduct was without justification, cause, or reason, and his conduct clearly violated established law of which a reasonable person would have known. Further, ***Monell*** claims exist, as the official policies and customs of the Jefferson Parish Sheriff's Office, promulgated through Defendant Normand, were the moving force behind the violation of Plaintiff's federal and state constitutional rights, as pled with detailed specificity below.

**JURISDICTION**

1. This Court has original jurisdiction and this action is brought pursuant to 42 USC §1983 and §1988. Jurisdiction is founded on 28 USC §1331, §1343, §1367, and the 5th, 4th, and 14th Amendments to the U.S. Constitution. Supplemental jurisdiction over claims under state constitutional and statutory law is also invoked.

**VENUE**

2. Venue lies in the U.S. District Court for the Eastern District of Louisiana pursuant to 28 USC §1391(b) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred within Jefferson Parish, State of Louisiana.

**JURY**

3. A jury trial is requested.

## PARTIES

4. Plaintiffs, **Santos Hernandez Gomez** and **Maria Felix Lopez Espinoza**, both persons are of the full age of majority and residents of Metairie, Louisiana, Jefferson Parish, Eastern District of Louisiana. Santos Hernandez Gomez and Maria Felix Lopez Espinoza sue on behalf of their fifteen-year-old son, Y.H.L.("Plaintiffs"), who is also a resident of Metairie, Louisiana, Jefferson Parish, Eastern District of Louisiana.

5. Defendant, **Sheriff Newell Normand** ("Defendant Normand"), resident of Jefferson Parish, Eastern District of Louisiana, is Sheriff and Chief Law Enforcement Officer for Jefferson Parish, a political subdivision of the State of Louisiana, and ultimate supervisor of Jefferson Parish Sheriff's Office ("JPSO"). At all times, relevant to this cause, Defendant Normand was the ultimate policy- and decision-maker relative to officer hiring, training, supervision, discipline, and was responsible for the policies, practiced, customs, procedures, deliberate indifferences, and negligence of defendant officer named herein. Defendant Normand, was also responsible for the hiring, training, supervision, discipline, and control of personnel under his command, which included the defendants named herein and referenced herein. Defendant Normand is sued in his official capacity.

6. Defendant, **Sergeant Julio Alvarado** ("Defendant Alvarado"; "Defendants") is a person of the full age of majority, and on information and belief a resident of the Eastern District of Louisiana. At all pertinent times, herein, he was acting under color of state law and in the course and scope of his employment with JPSO. He is sued in his individual and official capacities.

7. At all times material throughout this complaint, Defendants acted under color of state law, ordinance and/or regulation, and in the course and scope of their employment with JPSO.

**COMPLAINT**

8. On or about Thursday, December 10, 2015 at approximately 8:30p.m., the 14-year-old, Plaintiff, at the time of this incident, and his friend (hereinafter referred to as "friend #1"), were riding their bikes and playing "lucha libre," on Veterans Memorial Boulevard in Metairie, Louisiana.

7. While playing and riding their bikes, friend #1, noted they were going to get home late, so he tried to pass the plaintiff on his bike, but fell on the ground.

8. As a result of falling on the ground, the plaintiff and friend #1 initially started laughing.

9. Friend #1 then got angry that the plaintiff was laughing at him, so he pushed the plaintiff's bike.

10. Afterwards, friend #1 and the plaintiff began to wrestle.

11. Thereafter, an anonymous lady came out and stated to them "there is no fighting".

12. Accordingly, the plaintiff, along with friend #1 picked up their bikes and left the parking lot.

13. Suddenly the plaintiff and friend #1 noticed a police unit behind them with its lights activated, but they kept riding on their bikes, and turned into a parking lot behind a home.

14. When the plaintiff and friend #1 saw the police unit pass, they started riding again, when unexpectedly, an unmarked, white Ford Explorer, approached them.

15. An unidentified male jumped out of the vehicle and pulled out his weapon and ordered the plaintiff and friend #1 to drop their bikes, who later was identified as Defendant, Alvarado.

16. Plaintiff complied and dropped his bike and put his hands behind his neck.

17. Immediately, thereafter, a grey Ford F150 arrived with more male police officers.

18. Friend #1 tried to run, but one of the male officers grabbed him.

19. While friend #1 was being detained by the officer that grabbed him, suddenly and without warning or justification, Defendant, Alvarado, grabbed the plaintiff's by the neck and slammed his head against the ground and concrete with the specific intent to inflict pain.

20. Defendant's action was successful as the Plaintiff felt immediate, excruciating pain and dizziness and felt as if he had lost consciousness.

21. As plaintiff lay face down on the ground, another very heavy-set police officer held the plaintiff's legs down, and said officer's weight caused the plaintiff's arms to be pinned under his body. Because Defendant, Alvarado wanted access to the plaintiff's hand, he shoved the plaintiff's body, while stilling lying on the ground, to pull out the plaintiff's left hand which was trapped between his body and the concrete. This unnecessary forceful action caused more facial, hand, and arm abrasions to the plaintiff.

22. All the while the plaintiff was yelling, "why are you doing this to me, I did nothing to you." At no time did the plaintiff pose an immediate threat to the safety of any of the officers nor did the plaintiff verbally threaten the officers in any way at any time.

23. The Defendant, Alvarado, responded "that's what you get because your friend didn't want to listen."

24. While blood was pouring from the plaintiff's face and he was also experiencing blurry vision, the plaintiff began asking the officers to "please call the ambulance, because he bleeding a lot."

25. The officers responded, "shut up, and stop acting like a girl!"

26. Then suddenly, Defendant, Alvarado, threw plaintiff on the ground again and two other males, assumed to also be police officers were on top of him, applying a lot of pressure on his neck area. This was not the tense, rapidly-evolving, type of situation that called for "split-second" decisions regarding the type of force necessary to be used. It was objectively unreasonable to use such excessive force.

27. Plaintiff, then begged, "please, don't do this to me, my face hurts."

28. Then, defendant, Alvarado, told the plaintiff in Spanish, "malditos latinos!" "voy a mandar tu mama y toda tu familia devvelta a tu pais yo no se porque tu venistes a este pais. Which translates in English to "ya'll freaking Latinos," "I'm going to send your mom, all your families back to your country, I don't know why you came to this country."

29. Plaintiff was later taken to Children's Hospital.

30. While the Plaintiff was speaking to the nurse at Children's Hospital and telling his story, the officer who transported him to Children's Hospital began making unspoken signs and faces directed to the Plaintiff in an attempt to get the Plaintiff to stop talking to the nurse.

31. Suddenly, Defendant, Alvarado, appeared in the hospital room of the Plaintiff, and told the plaintiff, "use this as an example of what can happen."

32. From the hospital, Defendants transported the plaintiff to Jefferson Parish Juvenile Detention Center.

33. Plaintiff was charged and booked with allegedly disturbing the peace/fighting, simple obstruction of a highway, resisting an officer by running or fighting, and battery on a police officer.

34. On December 11, 2015, plaintiff was released from detention to his mother, Maria Felix Lopez Espinoza.

35. Besides, hospital treatment for a neck injury, abrasions to the forehead, cheek, nose, and a black eye that swollen shut, plaintiff has also sought treatment from Louisiana Primary Care for other injuries.

36. The injuries Plaintiff sustained encumbered his ability to complete his academic work and his school participation.

37. Plaintiff was also prescribed medication and was taking multiple pain medications for his injuries.

## CAUSES OF ACTION

38. Plaintiff incorporates and re-alleges paragraphs 1-37.

***COUNT 1: 42 USC §1983 Monell, as to Jefferson Parish Sheriff's Office through Sheriff Newell Normand, Officially***

38. Defendant Normand knew or should have known of Defendant Alvarado's violent history and violation of other citizens' constitutional rights while acting in the course and scope of his duties as an employee of JPSO.

39. Defendant Normand knew or should have known that Defendant Alvarado's unlawful conduct caused JPSO to have to pay damages to injured persons other than Plaintiff.

40. Defendant Normand knew or should have known that officers under his control and authority were held liable with Defendant Alvarado, either for engaging in the same unlawful excessive conduct or for failing to act in the face of their colleagues subjecting persons to excessive force and/or unlawful arrests.

41. Defendant, Normand repeatedly, knowingly, failed to discipline, train, and supervise officers, such as Defendant, Alvarado, who he knew engages in conduct that violates citizen's federal and state constitutional rights to be protected from excessive force, unlawful arrests, seizures, and imprisonment. Defendant, Normand had a constitutional duty to ensure that all JPSO officers, including the defendants acted in a manner so as to preserve the constitutional rights of every citizen of Jefferson Parish, including the plaintiff. Defendant, Normand had a constitutional duty to properly train, supervise and discipline members of JPSO, but has failed to do so. Defendant Normand has breached his duty including but not limited to; 1). Failing to adequately and properly train and educate his officers with respect to procedures to employ when interacting with all citizens, including stops, seizures, detentions and arrests, and the proper use of force, creating an atmosphere where illegal and unconstitutional behavior is tolerated and

accepted in deliberate indifference and reckless disregard to the welfare of the public at large and more particularly the 14 year old plaintiff; 2). Failing to properly supervise and discipline his officers with respect to the violations of the Constitution and laws of the State of Louisiana and the Constitution of the United States regarding the use of force, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned and accepted in deliberate indifference and reckless disregard to the public at large and more particularly to the 14 year old plaintiff; 3). Failing to adequately monitor and evaluate the performance of his officers and their compliance with the laws and policies, practice and customs with respect to the use of force.

42. Defendant Normand condones and ratifies the conduct of this officer, as evidenced by the fact that Defendant Alvarado ascended in the ranks at JPSO to a Sergeant.

43. The custom of JPSO, through Defendant Normand, is to reward and promote officers who knowingly violate citizens' federal and state constitutional rights, use excessive force, as evidenced by the failure of JPSO to launch an investigation of Defendant, Alvarado, after the audio tape statement and brutally beaten face of the 14-year-old Plaintiff, without compromising and further violating Plaintiff's federal constitutional rights.

***COUNT 2: 42 USC §14141, as to Jefferson Parish Sheriff's Office through Sheriff Newell Normand, Officially***

44. The custom of JPSO, through Defendant Normand, is to engage in a pattern or practice of conduct, especially with the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

***COUNT 3: 42 USC §1983 and 5th and 14th Amendments, as to Jefferson Parish Sheriff's Office through Sheriff Newell Normand, Officially***

44. In order for a formal investigation of Defendant to open, JPSO told Plaintiff, through his attorney that Plaintiff would have to make a statement.

45. At the time JPSO told this to Plaintiff through counsel, JPSO knew that Plaintiff had been arrested and that charges were pending against him in connection with the incident about which Plaintiff was complaining.

46. Defendant Normand, as ultimate policymaker and enforcer at JPSO, is liable to Plaintiff for violation of his 5th and 14th Amendment due process rights and right to remain silent.

47. Defendant Normand is also liable unto Plaintiff for failure to follow and enforce the policies of JPSO governing public integrity bureau complaints and allegations of police misconduct, which do not require a complainant to make a formal statement, especially when Defendant Normand has probable cause to believe one of his officers has engaged in misconduct, without the alleged victim of the misconduct filing a formal complaint.

48. The video surveillance and graphic color facial photos of the 14-year-old, Plaintiff's bruised and beaten face and Plaintiff not resisting, but seeking only to protect himself, constitutes the probable cause on which Defendant Normand could have relied, without compelling Plaintiff to make a statement.

***COUNT 4: 42 USC §1983 4th and 14th Amendments, as to Defendant Alvarado, personally and officially***

49. Defendant Alvarado brutally beat 14-year-old Plaintiff causing severe damage to plaintiff's eye and face, which required ongoing treatment since December 10, 2015.

50. Other JPSO's officers present on December 10, 2015, watched as Defendant Alvarado brutally beat and injured Plaintiff.

51. Defendant Alvarado forcefully, slammed the Plaintiff to the ground, then beat him, only to place Plaintiff in handcuffs and arrest him, after an allegedly lawful arrest. There were at least four (4) officers present during the arrest, and there was no indication that the plaintiff or friend #1 was armed or that the circumstances were volatile or deadly, therefore, the use of the unnecessary forceful arrest was unwarranted.

52. Defendants conduct was motivated by Plaintiff's nationality which is protected and there was no probable cause for defendant's initial stop. In committing the acts complained of herein, the defendants acted jointly and under color of state law to deprive the plaintiff of his clearly established constitutionally protected rights under the 4th and 14th amendments including but not limited to a). freedom from the unreasonable, unjustified, and excessive force; b). freedom from deprivation from liberty without due process; c). freedom from summary punishment; d). freedom from the prevention of JPSO from using unnecessary and excessive force.

53. As a result of the Defendant's excessive force, Plaintiff had to seek medical treatment at Children's hospital before being incarcerated in juvenile detention.

**Under Louisiana Law**

***COUNT 5: LSA C.C. Art. 2315, Intentional Infliction of Emotional Distress, as to Defendant Alvarado, personally and officially***

As a direct and proximate result of the violation of his constitutional rights by the defendants, the plaintiff has suffered general and special damages as alleged in this complaint

and is entitled to relief under the laws of the State of Louisiana. The plaintiff seeks the award of the cost of this litigation and his reasonable attorney's fees.

54. Because the conduct displayed by Defendant Alvarado in using unnecessary and excessive force to make an arrest of a 14 year old has violated state and federal law, it is *per se* outrageous.

55. This conduct caused Plaintiff to experience severe physical pain and severe physical pain and severe emotional distress, which manifests, among other ways, in the form of headaches, bruising, swelling, skin discoloration, sleeplessness, nightmares, and loss of appetite.

56. The physical pain and emotional distress Plaintiff suffers as a result of being beaten by Defendant Alvarado is so severe Plaintiff has difficulty concentrating and focusing in school and his customary participation in sports has been impeded.

***COUNT 6:  LSA C.C. Art. 2320, Vicarious Liability, as to Defendant Normand, officially***

57. Defendant, Normand, is vicariously liable unto Plaintiff for the negligent, grossly negligent, and knowingly unlawful acts Defendant, Alvarado, subjected Plaintiff to, which violated Plaintiff's federal constitutional rights, which caused Plaintiff to endure severe physical and emotional distress, and which were done during the course and scope of Defendant, Alvarado's employment with JPSO in the following respects, but not limited thereto, to-wit:

- Negligent hiring of employees;
- Negligent supervision of employees;
- hiring reckless and careless individuals;
- Failure to do a thorough criminal background check before hiring its employees;
- Failing to take into account the safety of others;

Failing to act as a reasonable and/or prudent person would under the same or similar circumstances together with any and all other acts of negligence through omission or commission that may be shown at the time of trial.

**DEMAND**

As a direct and proximate result of the acts and omissions of the defendants, the plaintiff has sustained injuries and damages. The injuries, damages and relief which plaintiff seeks from the defendant jointly and severally, under both state and federal law includes but are not limited to: 1). Damages for physical Pain and suffering, past, present and future; 2). Damages for emotional Pain and suffering, past, present and future; 3). Damages for medical expenses past, present and future; 4). Damages for loss of enjoyment of life, past, present and future; 5). Punitive damages because the defendants conduct was willful, malicious, oppressive/reckless and it was of such a nature that punitive damages is warranted and should be imposed on all defendants in an amount commensurate with the wrongful acts alleged herein as awarded by a jury; 6). Attorney's fees; 7). Injunctive relief precluding the defendants from engaging in this type of conduct and behavior herein and in the future and requiring JPSO to provide proper policy, training and supervision to its officers and holding them accountable for their conduct and misconduct; Plaintiff avers that his amount in controversy exceeds the sum or value of $75,000.00.

**DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

58. Plaintiff re-assets paragraphs 1-57 above.

59. Plaintiff has alleged violation of his clearly established constitutional rights.

60. Defendant's conduct was objectively excessive and unreasonable in the light of clearly established law at the time of the incident.

61. Defendant was not in any immediate threat of bodily harm from Plaintiff.

62. Defendant intended to harm Plaintiff, as demonstrated by, among other things, his failure to identify himself as law enforcement, the excessive and unreasonable force used towards the Plaintiff's initial alleged crime of disturbing the peace by fighting, insistence that Plaintiff make a statement, despite Policy Information Base ("PIB") policy empowering an investigation of alleged police misconduct to initiate upon a finding by Defendant Normand reasonably believing that such conduct has occurred.

63. Defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above described acts and/or omissions.

64. Plaintiff suffered compensatory, special, and punitive damages in excess of $75,000.01 for following:

A. Extreme mental anguish and emotional distress as a result of being physically assaulted and battered by Defendant Alvarado;

B. Extreme physical abuse, mental anguish, and emotional distress as a result of the intentional infliction of emotional distress to which Defendant Alvarado subjected Plaintiff;

C. Violation of Plaintiff's civil rights by Defendants Alvarado and Normand; and

D. Punitive damages for egregious acts and omissions of Defendants Alvarado and Normand.

65. Plaintiff is entitled to attorney fees for litigation of this matter.

66. Plaintiff requests and is entitled to a trial by jury.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs' pray that after due proceedings there be judgment in his behalf and against all defendants jointly, severally, and *in solido*, as follows:

67. Compensatory, special, and punitive damages;

68. The cost of this action and reasonable attorney fees as provided by 42 USCA §1983;

69. Judicial interest from date of judicial demand;

70. Trial by jury; and

71. Such further relief as this Court deems just and equitable.

**RESPECTFULLY SUBMITTED:**

**LAW OFFICE OF MIGUEL A. ELIAS**

/s/ Miguel A. Elias

**MIGUEL A. ELIAS**
**4224 Williams Boulevard**
**Kenner, Louisiana 70065**
**Telephone: 504/469-3300**
**Facsimile: 504/469-3353**
**EM: info@meliaslaw.com**

***Attorneys for Plaintiffs***

**CERTIFICATION OF REQUEST FOR SUMMONS FOR SERVICE OF PROCESS**

I certify that a request for issuance of a summons has been made at the same time with the filing of this complaint and service of process will be made on the following Defendants within time delays prescribed by FRCP rule 4:

Sheriff Newell Normand
Chief Law Enforcement Officer
Jefferson Parish Sheriff's Office
725 Maple Avenue
Harvey, LA 70058

Sergeant Julio Alvarado
Jefferson Parish Sheriff's Office
725 Maple Avenue
Harvey, LA 70058

/s/ Miguel A. Elias, Esq.

Miguel A. Elias **Bar Roll # 25384**
***Attorney for Plaintiff***