UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SANTOS HERNANDEZ GOMEZ ET. AL**　　　　**CIVIL ACTION**

**VERSUS**　　　　**NO:　16-17046**

**SHERIFF NEWELL NORMAND, ET AL**　　　　**SECTION: "H" (4)**

## ORDER

Before the Court is a **Motion to Compel Discovery and for Fees and Costs Pursuant to Fed. R. Civ. P. 37 (R. Doc. 41)** filed by the Defendants seeking an order to compel Plaintiff to provide complete and meaningful responses to Defendants' written Interrogatories and Requests for Production of Documents. The motion is opposed. R. Doc. 42. The motion was heard on Wednesday, October 25, 2017. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.　Background**

The plaintiffs, Santos Gomez and Maria Felix Espinoza filed the lawsuit on behalf of their minor son, YHL, a fourteen year old, in which they allege that YHL was unlawfully attacked, beaten, and falsely arrested by Defendant, Sergeant Julio Alvarado ("Alvarado"). The plaintiffs also named Sheriff Newell Normand, the Sheriff of Jefferson Parish, who allegedly had unlawful policies and customs and who was responsible for hiring, training, and supervising personnel. Rec. Doc. 1.

Plaintiffs assert that, on December 10, 2015, YHL and his friend ("Friend #1") were riding their bikes and playing "luche libre"[1] on Veterans Memorial Boulevard in Metairie, Louisiana. *Id.* at p. 4. An anonymous lady came out and told the two that "there is no fighting." *Id.* YHL and Friend #1 subsequently picked up their bikes and left the parking lot. *Id.*

---

[1] Lucha libre is a term used in Mexico for a form of professional wrestling.

1

YHL and Friend #1 noticed a police unit, with lights activated, behind them. *Id.* They kept riding their bikes, turning into a parking lot behind a home, when they were approached by an unmarked, white Ford Explorer. *Id.* Alvarado allegedly jumped out of the vehicle and pulled out his weapon, ordering YHL and Friend #1 to drop their bikes. *Id.* at p. 5. A grey Ford F150 arrived with more officers. *Id.* YHL complied with the officer's instruction. However, Friend #1 attempted to run and was caught by another officer. *Id.* While Friend #1 was being detained, Plaintiffs allege that, without warning, Alvarado grabbed YHL by the neck and slammed his head against the ground. *Id.* Plaintiffs allege that, at no time, did YHL pose an immediate threat to the safety of any of the officers. *Id.*

YHL allegedly began asking the officers to call the ambulance because he was bleeding. *Id.* at p. 6. According to Plaintiffs, the officers allegedly responded, "Shut up, and stop acting like a girl!" *Id.* Allegedly, Alvarado threw YHL on the ground again, and two other officers were on top of him, applying pressure to his neck area. *Id.* YHL allegedly begged, "Please don't do this to me, my face hurts." Alvarado allegedly responded to YHL in Spanish and stated, "Ya'll freaking Latinos. I'm going to send your mom, all your families back to your country, I don't know why you came to this country." *Id.*

YHL was subsequently taken to Children's Hospital, where he was treated for his injuries.[2] *Id.* Alvarado allegedly threatened YHL in an attempt to get YHL to stop talking to the nurse. *Id.* at p. 6-7. YHL was transported from the hospital to Jefferson Parish Juvenile Detention Center and charged with disturbing the peace/fighting, simple obstruction of a highway, resisting an officer by running or fighting, and battery on a police officer. *Id.* at p. 7.

On December 11, 2015, YHL was allegedly released from detention. *Id.* As such, Plaintiffs, on behalf of their minor son, YHL, have filed this action against Alvarado and Sheriff

---

[2] YHL was also treated for injuries at Louisiana Primary Care. R. Doc. 1, p. 7.

Newell Normand[3], asserting a *Monell*[4] claim and seeking damages for physical pain and suffering, intentional infliction of emotional distress, vicarious liability, and all other damages. *Id.* at p. 13.

At this time, Defendants have filed a motion to compel Plaintiffs to completely and meaningfully respond to their written discovery requests. R. Doc. 41. Plaintiffs did respond, however, Defendants argue that Plaintiffs' responses to Interrogatories 9-18 were insufficient. R. Doc. 41-1, p. 7. In addition, Defendants argue that Plaintiffs failed to produce documents requested in Request for Production No. 2. *Id.* at p. 6. Defendants allegedly allowed Plaintiffs until October 9, 2017, to provide supplemental responses; Plaintiffs provided supplemental responses to Interrogatories 11-16 on October 10, 2017. *Id.* at p. 7. Defendants argue that Plaintiffs' supplemental responses to Interrogatories 9-18 are still insufficient, and further, Plaintiffs have not supplemented their response to Request for Production No. 2, resulting in the instant motion. *Id.* Defendants also seek reasonable attorneys' fees and costs. Id. at p. 8.

In opposition, Plaintiffs contend that they have fully responded to Defendants' written discovery requests through supplemental answers to interrogatories. R. Doc. 42. Plaintiffs argue that they provided supplemental answers to Interrogatory Nos. 9-10 and 17-18 on October 16, 2017. *Id.* at pp. 5-6. In addition, Plaintiffs contend that they initially produced everything in response to Defendants' Requests for Production. Id. pp. 7-8. As such, Plaintiffs argue that Defendants' motion to compel is now moot. Id. at p. 7.

## II.     **Standard of Review**

Discovery of documents, electronically stored information, and tangible things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." Fed.

---

[3] Since the filing of this lawsuit, Sheriff Normand is no longer the sitting Sheriff for the Jefferson Parish. Because Plaintiffs sued Sheriff Normand solely in his official capacity, pursuant to Federal Rule of Civil Procedure 25(d), Plaintiffs' claim against the Sheriff in his official capacity is against Sheriff Lopinto.

[4] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

R. Civ. P. 34. Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . ." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifics that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed.R.Civ.P. 26(b)(1).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 37(a) allows a party in certain circumstances to move for an order compelling discovery from another party. In particular, Rule 37(a)(3)(b)(iii)-(iv) allows a party seeking discovery to move for an order compelling an answer or production of documents where a party "fails to answer an interrogatory" or "fails to produce documents." An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4).

### III. Analysis

Defendants have filed the instant motion seeking an order to compel Plaintiffs to provide complete and meaningful responses to Defendants' written discovery requests. R. Doc. 41. Defendants argue that Plaintiffs' responses to Interrogatories Nos. 9-18 are insufficient. In particular, Defendants argue that Plaintiffs' allegations that the unwarranted attack was policy driven requires a more complete response in support of their claims against the Sheriff.

Plaintiffs argue that they have fully complied with Defendants' Interrogatories Nos. 9-18. Plaintiffs further argue that discovery is still ongoing and that they are still in the process of obtaining evidence to support their claims, making Defendants' requested discovery premature. After the motion was filed, plaintiffs filed a supplement to their Interrogatory responses regarding Interrogatories Nos. 11, 12, 13, 14, 15, and 16. Rec. Doc. 41-6. The Court will first address Defendants' interrogatories, and then address their request for production.

#### A. Defendants' Interrogatories

##### 1. Interrogatories 9, 10

Interrogatory No. 9 sought the factual basis for the allegation that Alvarado had a violent history. R. Doc. 41-4, p. 10. Interrogatory No. 10 sought the facts that support the allegation that Alvarado's unlawful conduct has caused Jefferson Parish Sheriff's Office to pay damages to injured persons. *Id.*

In response to both Interrogatories Nos. 9 and 10, the Plaintiffs objected to the request as being unreasonably burdensome and duplicative. Neither of these answers is a sufficient response. Further, Plaintiffs state that they provided supplementation, which is contained in the opposition memorandum, but is not attached as an exhibit or part of the record. Even these "supplemented" responses, to the extent that the Court notes they are similar to other responses given, are insufficient. In the alleged responses to these questions, the plaintiffs indicated that the Sheriff's

Office under Normand has been subjected to numerous complaints as evidence by news media reports and refers the defendants to three such reports. This response however does not indicate if the individuals were juveniles or adults, the nature of the incidents and whether Normand even knew of these incidents and was complicit. Even considering the "supplemented" responses the Court finds they are deficient and require further supplementation.

### 2. Interrogatories 11-16

Interrogatory No. 11 sought facts that support their contention Sheriff Normand should have known that officers under his control were engaged in excessive force and unlawful conduct. Rec. Doc. 41-6, p. 4. Interrogatory No. 12 sought a factual basis for the allegation that Normand failed to train the officers. *Id.* Interrogatory No. 13 sought a factual basis that Sheriff Normand condoned and ratified their conduct. Interrogatory No.15 sought a factual basis that the Sheriff's Office, through the Sheriff, had a practice of depriving juveniles of their rights protected by the constitution. *Id.* at p. 5. Interrogatory No. 16 sought a factual basis that Sheriff Norman had probable cause to believe that one of his officers engaged in misconduct. *Id.* at p. 7. To each of Interrogatories Nos. 11, 12, 13, 15, and 16 the plaintiffs answered that under Sheriff's Normand's command that there were complaints and identified three complainants. The plaintiffs further indicate that they are relying upon the doctrine of *res ipsa locquitor* for each of this areas.

The Court finds the Plaintiffs' responses to Interrogatories 11, 12, 13, 15, and 16 are not responsive to the inquiry. For example, the Interrogatories sought facts that Sheriff Norman knew that his officers were engaged in excessive force and unlawful conduct, failed to train his officers, condoned the conduct of the officer, and engaged in a pattern of depriving juveniles of their rights. In response to these questions the plaintiffs indicated that the office under Normand has been subjected to numerous complaints as evidence by news media reports and refers the defendants to three such reports. This response however does not indicate if the individuals were juveniles or

6

adults, the nature of the incidents and whether Normand even knew of these incidents and was complicit. These responses are deficient and require further supplementation.

The only Interrogatory to which plaintiffs directly answer was interrogatory No. 14, which sought the facts supporting the contention that the Sheriff's office and the Sheriff promoted officers who knowingly violated the rights of citizens through excessive force. In responding, the Plaintiffs stated that Officer Alvarado despite being disciplined was later promoted. *Id.* at p. 6.

Additionally, the Court finds that the supplemental response to Interrogatory No. 14 is incomplete. It indicates that Officer Alvarado was promoted, but does not indicate when. This response too requires supplementation. It is therefore ordered that the plaintiffs supplement their responses to Interrogatories Nos. 9-16 no later than twenty (20) days before the close of the discovery period.

### 3. Interrogatory 17-18.

Interrogatory No. 17 and sought the name of the person who is in possession of a video of the incident. R. Doc. 41-4, p. 15. Interrogatory No. 18 seeks facts that support the contention that the actions of the officer was based upon plaintiff's nationality as well as any witnesses. *Id.* at p. 16. In the Plaintiffs' original responses to these Interrogatories the plaintiff objected, did not provide an answer, and reserved the right to supplement and amend. These are not sufficient responses.

Plaintiffs, in their opposition, state that they provided supplemented responses to Interrogatories Nos. 17 and 18 and include their answers in the opposition, however, the actual supplemented responses are not attached as an exhibit or part of the record and solely copied within the opposition. Even these "supplemented" responses are insufficient. The answer to Interrogatory No. 17 indicated only that the Plaintiffs are not in possession of a video, even though the Interrogatory asked for the name of the person who was in possession of the video. The answer to

Interrogatory No. 18 listed the name of the person who would testify about what the officer said at the time of the incident, but does not address further address the issue of motivation. The Plaintiffs reserved their right to supplement these responses at a later date. The Court finds that the "supplemental" responses to Interrogatories Nos. 17 and 18 are also inadequate and require further supplementation.

### 4. Timing of Supplementation

Having determined that each of the contested interrogatories require supplementation, the timing of the supplementation is dependent upon the type of interrogatory at issue. For example, Interrogatories 17-18 are seeking either identity of a person in possession of a video or someone who can testify that the conduct of the officer is based upon nationality. These two Interrogatories require supplementing no later than seven (7) days from the signing of this order.

Interrogatories 9-16, however, are true contention interrogatories. They seek the facts that support the contentions contained in particular paragraphs in the complaint. As such, they are called contention interrogatories.

"[A] contention interrogatory . . . [is] an interrogatory that asks a party to state what it contends, state whether it makes a specified contention, state all the facts upon which it bases a contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for contention. *InternetAd Sys., LLC v. ESPN, Inc.*, No. 03-2787, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004)(citations omitted)..

Rule 33(a)(2) states: "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." When faced with the question of when to require responses to contention interrogatories, "[i]t is within the court's discretion to determine the

8

appropriate time for responding to a contention interrogatory." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2017 WL 2825925, at *9 (M.D. La. June 30, 2017) (citing *In re Katrina Canal Breaches,* No. 05-4182, 2007 WL 1852184, at *3 (E.D. La. June 27, 2007)).

Indeed, "most courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period.'" *Sigman v. CSX Corp.*, No. 15-13328, 2016 WL 7444947, at *2 (S.D. W.Va. Dec. 27, 2016) (quoting *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)). As the court in *Sigman* explains, there are a number of reasons to discourage the use of early contention interrogatories:

> First, there is "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." In addition, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. Moreover, in cases where the parties anticipate the production of "an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery."

*Id.* (internal citations omitted) (collecting cases); *see also Firefighters' Ret. Sys.*, 2017 WL 2825925, at *9.

At other times, courts have required parties seeking early contention interrogatories to "show that the interrogatories were limited, specifically crafted questions seeking responses that would 'contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56.'" *Brassell v. Turner*, No. 05-476, 2006 WL 1806465, at *3 (S.D. Miss. June 29, 2006) (quoting *In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. Oct. 28, 1985)).

The Court notes that the Plaintiffs' responses indicating that the defendants already took the plaintiffs deposition and asked them this very line of questioning is an inappropriate objection

to supplementing the discovery. However, the court further notes that the type of questions presented are questions that may result in supporting information after the parties have completed discovery and which may warrant supplementation at a later dated. The Court also notes for the reasons assigned above that the Plaintiffs' supplemental responses to Interrogatories Nos. 11-16 are inadequate. It is further noted that Plaintiffs have not received discovery responses from Defendants and the Parties still are scheduling witness depositions in relation to the *Monell* claim.

The Court finds that Plaintiffs are obligated to supplement their answers to Interrogatories Nos. 9-18 and the Motion to Compel as to Interrogatories Nos. 9-18 is **GRANTED.** The responses to Interrogatories Nos. 9-16 shall be supplemented no later than twenty (20) days before the discovery deadline. It is further ordered that the plaintiffs are required to supplement its responses to Interrogatories Nos. 17-18 no later than seven (7) days from the signing of this order for the reasons assigned above.

### 5. Defendants' Request for Production No. 2

Defendants further argue that, regarding Request for Production No. 2, Plaintiffs provide no reason as to why they have not obtained evidence in support of their claims against the Sheriff. Rec. Doc. 41-1, p. 14. In addition, Defendants argue that none of the documents requested from Plaintiffs are protected by the work product doctrine or the attorney-client privilege.

Defendants' Request for Production No. 2 requested the following:

> **REQUEST FOR PRODUCTION NO. 2:**
> Please provide all documentary evidence which you intend to introduce at the trial of this matter to support the allegations listed in your complaint.

In response, Plaintiffs answered:

> Plaintiff objects to this request as premature as discovery is still ongoing. Plaintiff further objects to this request as overly broad and unduly burdensome. Furthermore, the breadth of this request strays into the areas excepted from discovery under Rule 26 of the Federal Code [sic] of Civil Procedure, work product doctrine and attorney-client privilege. Subject to this objection and without waiver of same, Plaintiff states all non-privileged information is attached. Plaintiff

> reserves the right to supplement and amend this Response at a later date, should more information become available.

R. Doc. 42, p. 8.

Here, Defendants' request that Plaintiffs produce all documentary evidence they intend to use at trial in support of their allegations listed in the complaint is clearly overbroad. The instant litigation has been going on for less than a year and the discovery deadline is January 9, 2018. R. Doc. 49. As already mentioned, discovery is still ongoing for both parties. Therefore, the Court sustains Plaintiffs' objection as to the request being premature.[5] Further, the scheduling order governs the deadline for the submission of witness and exhibit lists. Rec. Doc. 32. As such, the motion with respect to the defendants' request for production is **DENIED**.

### 6. Attorneys' Fees and Costs

The Court should note that both parties seek reasonable expenses, including attorneys' fees, in preparing their respective motion and opposition.

Rule 37 provides that if the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both, to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

The Court finds that because the motion was partially granted and partially denied the requests for Attorney's fees and costs is **DENIED**.

---

[5] However, to the extent Plaintiffs object to Defendants' request for production on the grounds that the discovery is privileged, the objection is overruled because the evidence requested is not privileged.

## IV. Conclusion

**IT IS ORDERED** that the Defendants' **Motion to Compel Discovery and for Fees and Costs Pursuant to Fed. R. Civ. P. 37 (R. Doc. 41)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** to motion to compel responses to Interrogatories Nos. 9-18 is **GRANTED.** The obligation to supplement Interrogatories Nos. 9-16 is delayed until no later than twenty (20) days before the discovery deadline. The obligation to supplement Interrogatories Nos. 17 and 18 is required no later than seven (7) days from the signing of this order.

**IT IS FURTHER ORDERED** that should the deadlines in this case be extended, the Plaintiffs are required to supplement Interrogatories Nos. 9-16 twenty (20) days before the new discovery deadline.

**IT IS FURTHER ORDERED** that the motion to compel is **DENIED** to the extent that it seeks to compel a response to Request for Production No. 2.

**IT IS FURTHER ORDERED** that an assessment of attorney's fees and costs is **DENIED** for the reasons assigned above.

New Orleans, Louisiana, this 15th day of December 2017.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**